**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regency Midwest Ventures Limited Partnership, a South Dakota limited partnership, and Tom Biegler, an individual residing in South Dakota,<br><br>    Plaintiffs,<br><br>vs.<br><br>Best Western International, Inc., an Arizona non-profit corporation,<br><br>    Defendant. | CIV-16-02491-PHX-MHB<br><br>**ORDER** |

Pending before the Court are Defendant Best Western International, Inc.'s Motion to Dismiss Complaint (Doc. 13), Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. 18), and Defendant Best Western International, Inc.'s Reply in Support of Motion to Dismiss Complaint (Doc. 21). After considering the arguments raised by the parties in their briefing, the Court now issues the following ruling.

**BACKGROUND**

This case arises out of Plaintiffs' ("Ramkota"[1]) allegation that Defendant ("Best Western") improperly terminated the Membership Agreement between the two parties. Ramkota is the owner and principle of The Ramkota Hotel in Casper, Wyoming ("the Hotel"). Best Western is a non-profit corporation that serves as a membership association for

---

[1] The plaintiffs in this case are the owner and principle of The Ramkota Hotel in Casper, Wyoming. Plaintiffs refer to themselves collectively as "Ramkota".

1  Best Western branded hotel operators in North America. The Hotel became a Best Western
2  branded property in 2004. In agreeing to become a Best Western branded property,
3  Ramkota's Membership Agreement with Best Western required Ramkota to adhere to Best
4  Western's Bylaws & Articles (the "Bylaws"), and Rules and Regulations. The Bylaws
5  provide for membership termination if the Best Western Board of Directors, after a hearing,
6  finds grounds to cancel the membership, or, if rather than immediately cancelling the
7  member, the Board has granted the member a conditional extension, which sets forth a
8  remedial plan, but the member fails to satisfy the remedial plan. Under the Rules and
9  Regulations, one ground for terminating the Membership Agreement is receiving two failing
10 quality assurance scores in an 18 month period.

11    In May 2013, Best Western notified Ramkota that they were considering terminating
12 Ramkota's Membership Agreement because the Hotel had received two failing quality
13 assurance scores during an 18-month period. Ramkota requested and received a hearing
14 before the Best Western Board. Following the hearing, the Board concluded that grounds
15 existed to cancel Ramkota's membership. In lieu of cancellation, as permitted by the Bylaws,
16 the Board granted Ramkota a conditional extension listing conditions that must be met in a
17 timely manner in order for Ramkota to continue their membership. The conditions included
18 the requirement that Ramkota complete all items on the Property Improvement Plan by
19 March 31, 2014. Furthermore, the conditional extension stated that failure to complete all
20 conditions by the March 31, 2014 deadline would result in termination of the Membership
21 Agreement. On February 4, 2014 Ramkota asked for more time to complete the Property
22 Improvement Plan. Best Western granted an extension to October 1, 2014. In October 2014,
23 Best Western inspected Ramkota's compliance with the conditions set forth and took note
24 that portions of the Plan remained unfinished. Instead of terminating the Membership
25 Agreement, the Board once again granted a conditional extension with a deadline of February
26 24, 2015. Ramkota agreed to the latest extension. On March 4, 2015, a Best Western
27 inspection confirmed that Ramkota had not completed all requirements of the Plan.

1  The Hotel was operated as a Best Western member property until April 21, 2015, when Best Western terminated the Membership Agreement with Ramkota. Best Western justified the termination following Ramkota's alleged failure to make agreed upon improvements in a timely manner. Shortly after termination of the Membership Agreement, Ramkota began to remove indications that the Hotel remained affiliated with Best Western. Although Ramkota made an effort to remove Best Western trademarks from the Hotel, a Best Western inspection discovered that some Best Western marks remained at the Hotel. Additionally, a highway billboard had still wrongly signified that the Hotel was affiliated with Best Western.

On July, 25 2016, Ramkota filed the Complaint (Doc. 1) against Best Western. The Complaint sets forth claims under both state and federal law. Ramkota's Breach of Contract claim (Count One) and Breach of the Implied Covenant of Good Faith and Fair Dealing claim (Count Two) are predicated upon Arizona law. In Count Three, Ramkota requests declaratory judgment that Ramkota did not violate the Lanham Act or other applicable federal law for failing to remove Best Western trademarks from the Hotel in a timely manner.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2); Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248-49 (9th Cir. 1997). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. See Lucas v. Bechtel Corp., 633 F.2d 757, 759 (9th Cir. 1980). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). As for the factual

- 3 -

1    allegations, the Supreme Court has explained that they "must be enough to raise a right to
2    relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct.
3    1955, 1965, 167 L.Ed.2d 929 (2007). However, even though all allegations of material fact
4    are taken as true, that does not entail that this Court must also accept legal conclusions
5    portrayed as factual allegations as true as well. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
6    A pleading that offers conclusions or a recitation of the elements of a cause of action will not
7    suffice. Iqbal, 556 U.S. 662, 677-78. Thus, in ruling on a motion to dismiss, the issue is not
8    whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer
9    evidence to support the claims. See Gilligan, 108 F.3d at 249.

10   Generally, a district court may not consider any documents beyond the pleadings in
11   ruling on a 12(b)(6) motion. Hal Roach Studios, Inc. V. Richard Feiner & Co., 896 F.2d
12   1542, 1550 (9th Cir. 1990). However, while ruling upon the 12(b)(6) motion, the Court may
13   consider any documents which are submitted as part of the complaint. Branch v. Tunnell, 14
14   F. 3d 449, 453 (9th Cir. 1994), overruled on other grounds in Galbraith v. County of Santa
15   Clara, 307 F.3d 1119 (9th Cir. 2002). Additionally, the Court may consider any documents
16   referred to or "whose contents are alleged in a complaint and whose authenticity no party
17   questions." Id. at 454. Even if the complaint does not explicitly reference the documents at
18   issue, the district court may still consider a document the parties agree is authentic. Mason
19   v. Arizona, 260 F.Supp.2d 807, 814 (D. Ariz. 2003). This practice is so plaintiffs will not
20   purposely leave out "references to documents upon which their claims are based" upon to
21   survive a Rule 12(b)(6) motion.[2] Id.

22   ///
23   ///
24   ///

---

[2] In this ruling, the Court considered Exhibits A-E of Defendant Best Western International, Inc.'s Motion to Dismiss Complaint (Doc. 13). All of the exhibits were referenced in the Complaint and no party has questioned their authenticity.

- 4 -

**DISCUSSION**

**A.     Plaintiffs' Claim for Breach of Contract**

To state a claim for breach of contract under Arizona law, a plaintiff must allege (1) the existence of a contract between the parties; (2) defendant's breach of the contract and; (3) plaintiff's resulting damages. Snyder v. HSBC Bank, USA, N.A., 873 F.Supp.2d 1139, 1148 (D. Ariz. 2012). Best Western argues that it did not breach the contract because it was entitled to terminate the Membership Agreement with Ramkota. Ramkota agreed to Best Western's Membership Agreement; its Bylaws and Rules and Regulations; and the conditional extensions. Specifically, Section 13 of the Membership Agreement states that where grounds for termination of the Membership Agreement exist, in lieu of termination, Best Western may impose additional conditions for continuance of membership. Furthermore, the termination did not come until after Ramkota first failed two quality assurance inspections which then made Ramkota eligible for membership termination. Instead of immediately terminating the Membership Agreement, Best Western offered Ramkota conditional extensions which Ramkota accepted. After acceptance of the conditional extensions, Ramkota failed to timely complete the terms that it agreed to. According to Best Western, all of the Membership Agreement that Ramkota agreed to gave Best Western the right to terminate the agreement when it finally did on April 21, 2015; thus, no breach of contract occurred.

Ramkota relies upon a theory of substantial compliance. Ramkota quickly points out that their total investment into the Hotel was more than $4.6 million and that they completed 194 out of 197 requested improvements requested by Best Western. Under the substantial compliance doctrine, substantial, albeit deficient performance by a party, nevertheless entitles it to performance from the other. See 14 Williston on Contracts § 44:52 (4th ed.). Citing Cracchiolo v. Carlucci, 157 P.2d 352, 355 (Ariz. 1945) and Matson v. Bradbury, 10 P.2d 376, 378 (Ariz. 1932), Ramkota asserts that they were not required to completely finish the Property Improvement Plan, but instead that they were only required to substantially perform

the project. Moreover, once Ramkota substantially performed, then Best Western was required to meet its end of the bargain. See Zancanaro v. Cross, 339 P.2d 746, 750 (Ariz. 1950) ("The victim of a minor or partial breach must continue his own performance, while collecting damage for whatever loss the minor breach has caused him."). Instead of continuing to honor the bargain as required following the substantial performance by Ramkota, Best Western terminated the Membership Agreement.

Ramkota further argues that even if they did not substantially perform and their breach was material, Best Western still waived its right to terminate the Membership Agreement by acting as though no breach had occurred. Ramkota asks the Court to follow Hunter Contracting Co. v. Sanner Contracting Co., in which the Arizona Court of Appeals found that following a material breach "the non-defaulting party must elect to ... waive the breach and continue performance, or terminate the contract and sue for damages; and if the innocent party elects to continue performance he thereby waives the breach and may not recover damages therefore." 492 P.2d 735, 740 (Ariz. Ct. App. 1972). If failure to meet the Property Improvement Plan by the February 2015 deadline constituted a material breach, Ramkota argues that Best Western accepted performance by allowing Ramkota to continue to perform until a full two months after the Property Improvement Plan deadline, and thus waived the right to terminate the agreement. Ramkota posits that the reason Best Western waited two months to notify them of the breach was so Best Western would continue to have a hotel presence in Casper until the second hotel became operational.

In its reply, Best Western argues that substantial compliance does not apply here because this case involves a contractual dispute, as opposed to a construction dispute where a substantial compliance defense would apply. In Arizona, "[t]he fact that the parties voluntarily agree to associate with each other should not create for the courts the obligation to adjudicate such injuries, or impose liability beyond what was within the range of contemplation of the contracting parties." Aspell v. Am. Contract Bridge League of Memphis, Tenn., 595 P.2d 191, 195 (Ariz. Ct. App. 1979). According to Best Western,

1 absent illegal or arbitrary action towards its members, it has the right to enforce its
2 agreements with its members. Substantial compliance usually does not apply when the
3 agreement at issue expressly addresses what constitutes a breach and what remedies result
4 from any such breach. See, e.g., Am. Cont'l Insu. Co. v. Ranier Constr. Co., 607 P.2d 372
5 (Ariz. 1980). Moreover, "[t]he substantial performance rule does not apply when the parties,
6 by the terms of their agreement, make it clear that only complete performance will be
7 satisfactory." 15 Williston on Contracts § 44:53, at 259.

8 The Court finds that this is a contractual dispute, not a construction dispute. This is
9 not a case, as suggested by Ramkota, in which one party puts up the vast majority of the
10 consideration for the contract, and the other party gets out of paying over an immaterial
11 breach. Rather, Ramkota received all of the benefits of the renovations at the Hotel. As such,
12 the doctrine of substantial compliance does not apply. The governing documents made it
13 clear that Best Western was entitled to terminate the Membership Agreement if Ramkota did
14 not meet the explicit expectations. If Ramkota did not want to be bound to the conditions,
15 they simply did not have to accept them. The Court will grant Best Western's Motion to
16 Dismiss as to Ramkota's breach of contract claim.

17 **B.     Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair
18 Dealing**

19 Arizona law implies a covenant of good faith and fair dealing in every contract.
20 Rawlings v. Apodaca, 726 P.2d 565, 569-70 (Ariz. 1986). The purpose of that duty is to
21 ensure that neither party will act to impair the rights of the other to receive the benefits that
22 flow from their agreement. Id. The general rule is that an implied covenant of good faith and
23 fair dealing cannot directly contradict an express contractual term. Bike Fashion Corp. v.
24 Kramer 46 P.3d 431, 434 (Ariz. Ct. App. 2002). However, "[i]nstances inevitably arise where
25 one party exercises discretion retained or unforeclosed under a contract in such a way as to
26 deny the other a reasonably expected benefit of the bargain." Wells Fargo Bank v. Arizona
27 Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 30

28

(Ariz. 2002) (quoting Southwest Sav. & Loan v. SunAmp Sys., 838 P.2d 1314, 1319 (Ariz. Ct. App. 1992)). Therefore, Arizona law recognizes that a party can still breach the implied covenant of good faith and fair dealing, by exercising express discretion in a way that interferes with a party's reasonable expectations and by acting in ways not expressly excluded by the contractual terms, but which still interfere on a party's reasonable expected benefit of the bargain. Bike Fashion Corp., 46 P.3d at 434.

Ramkota argues that Best Western breached the implied covenant of good faith and fair dealing because it exercised its express contractual discretion in a manner inconsistent with Ramkota's reasonable expectations. Best Western placed conditions upon Ramkota that were unreasonable and nearly impossible to accomplish given time and labor restraints. Under those restraints, Ramkota claims it was reasonable to believe that as long as they made adequate progress towards meeting Best Western's standards, then Best Western would not have terminated the Membership Agreement.

Best Western argues that the governing documents themselves should frame the reasonable expectations of the parties. The implied covenant of good faith and fair dealing does not entitle a party "to protection in excess of that which is provided for in the contract, nor to anything inconsistent with the limitations contained in the contract." Rawlings, at 155. Ramkota cannot argue that the termination was outside the contemplation of the parties, since it was done pursuant to the parties' express and repeated understandings that termination would occur if the entire plan was not completed on time. Moreover, absent illegality or arbitrariness, courts tend to avoid meddling in the internal affairs of membership associations. See, e.g., Quimby v. School Dist. No. 21 of Pinal Cty., 455 P.2d 1019, 1022 (Ariz. Ct. App. 1969). Termination of the Membership Agreement was done pursuant to the express and repeated understandings that it would occur if the entire plan was not completed on time.

Failing to meet agreed upon deadlines to avoid termination of the Membership Agreement does not give rise to a claim for breach of the implied covenant of good faith and

fair dealing. Ramkota asks the Court to look beyond the plainly written terms of their own agreements, and grant them greater rights than that they bargained for. This the Court cannot do. When granting the conditional extensions, Best Western made it clear that if the imposed condition were not met, then the Membership Agreement would be terminated. If these terms were unsatisfactory to Ramkota, they simply should not have agreed to them.  The Court will grant Best Western's Motion to Dismiss as to Ramkota's breach of the implied covenant of good faith and fair dealing claim.

**C.     Plaintiffs' Claim Under the Declaratory Judgment Act**

The Declaratory Judgment Act states that federal courts "may declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201 (a). "[A] party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy". Cardinal Chemical Co. v. Morton Intern., Inc., 508 U.S. 83, 95 (1993). The phrase "case of actual controversy" refers to justiciable "cases" and "controversies" under Article III. Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). For an "actual controversy" to exist, there must be facts alleged that "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,"Id. A district court has "unique and substantial discretion" to decide whether to declare the rights of litigants. Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995), but is under "no compulsion to exercise that jurisdiction." Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942).

Ramkota argues that even if they failed to completely de-identify the Hotel following termination, they could still prevail on their claim for declaratory judgment that they did not violate the Lanham Act or other applicable statutes. As such, even though they failed to remove the marks in a timely manner, they are not precluded from seeking a declaratory judgment since they may not have violated applicable statutes. In order for Best Western to

- 9 -

prevail on a claim of trademark infringement, Best Western would have to show that Ramkota used the Best Western mark without consent and also that the mark was used by Ramkota in such a way that it was likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Hotel. Ramkota argues that they may be able to prevail on its claim if they can establish that they were operating with the implicit consent of Best Western, or if Ramkota was not using the mark in a way that would cause consumer confusion.

Additionally, Ramkota argues that laches should bar a Best Western trademark infringement claim against Ramkota. Laches may apply when the "trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1209 (9th Cir. 2000) (citation omitted). The amount of time an aggrieved party may wait varies with the particular facts of each case. 6 Callman on Unfair Comp. Tr. & Mono. § 23:35 (4th Ed.). As alleged in the Complaint, Best Western did not notify Ramkota that the highway sign continued to identify the Hotel as a Best Western property until five months after the termination.

Best Western points out that, in the Complaint, Ramkota concedes that they continued to use Best Western's trademarks after authorization had expired. The Complaint itself establishes that Ramkota was not authorized to continue to use the mark when Best Western demanded that Ramkota cease use of the mark in its October 2015 letter. The demand clearly placed Ramkota on notice that they were acting without consent of Best Western in continued use of the mark. Furthermore, in addressing the laches argument, Best Western argues that laches does not apply in the present case and cites abundant authority in support of their argument. For example, In RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC, the court stated that "[a] delay of under two years is not unreasonable as a matter of law." 655 F. Supp. 2d 679, 711 (S.D. Tex. 2009). Moreover, the court found that the party in that case did not give "implied permission" for use of the trademark by waiting only one year from discovery of the infringement to bringing the lawsuit. Id. Additionally, in Piper Aircraft

- 10 -

1  Corp. v. Wag-Aero, Inc., the court observed that two years has rarely, if ever been held to
2  be a delay of sufficient length to establish laches. 741 F.2d 925, 933 (7th Cir. 1984). Lastly,
3  in Philip Morris, Inc. v. Allen Distributors, Inc., a few months delay was insufficient to
4  establish laches. 48 F. Supp. 2d 844, 854 n.13 (S.D. Ind. 1999). Here, the delay was five
5  months, an insufficient time lapse to establish laches.

Ramkota's arguments are not persuasive. Ramkota clearly used the trademark without the consent of Best Western. Additionally, the cited authority supports Best Western's argument that laches does not apply to these facts. Even if Ramkota could demonstrate laches, with the dismissal of Ramkota's other claims, continued jurisdiction by the Court in the declaratory judgment claim is discretionary. See 28 U.S.C. § 2201 (a). Therefore, the Court will exercise its discretion and will grant Best Western's Motion to Dismiss Ramkota's declaratory judgment claim.

## CONCLUSION

The Court, finding that Ramkota has failed to assert any cognizable legal theory or sufficient facts to support their claim of breach of contract; and has failed to assert any cognizable legal theory or sufficient facts to support their claim of breach of the implied covenant of good faith and fair dealing - will grant Best Western's Motion to Dismiss those claims. Furthermore, the Court in exercising its discretion - will grant Best Western's Motion to Dismiss Ramkota's declaratory judgment claim.

Accordingly,

**IT IS ORDERED** that "Defendant Best Western International, Inc.'s Motion to Dismiss Complaint" (Doc. 13) is **GRANTED**;

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice.

DATED this 13th day of March, 2017.

*Michelle H. Burns*

Michelle H. Burns
United States Magistrate Judge